**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert R Sfetku, | No. CV-18-00028-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Robert R. Sfetku's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (Doc. 1 at 1–4).[1] This matter has been fully briefed by the parties.[2] Although Plaintiff requested oral argument, the Court denies this request because it would not materially assist the Court in reaching an informed decision, and because Plaintiff failed to follow the Court's procedure for requesting oral argument set

---

[1] The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), which provides that an individual may obtain review of any final decision of the Commissioner of Social Security "by a civil action commenced within sixty days after the mailing to him of notice of such decision *or within such further time as the Commissioner of Social Security may allow.*" (emphasis added). Although the Appeals Council denied Plaintiff's request for review of the ALJ's June 9, 2016 decision on October 6, 2017, (Doc. 15-3 at 9–12), Plaintiff claims he did not receive notice of the ALJ's final decision until December 18, 2017, (Doc. 1 at 3, 5–14). Consequently, the Appeals Council granted Plaintiff's request for additional time to commence a civil action by extending the time within which Plaintiff must file through January 4, 2018, the date Plaintiff filed his civil action with the District Court. (Doc. 15-3 at 2–3, 5). Defendant admits that jurisdiction is proper under 42 U.S.C. § 405(g). (Doc. 14 at 2).

[2] (*See* Doc. 18; Doc. 20; Doc. 21).

forth in the Social Security Scheduling Order (Doc. 5).[3] Accordingly, the Court now rules on Plaintiff's appeal.

## I.    BACKGROUND

The parties are familiar with the background information in this case, and it is summarized in Administrative Law Judge ("ALJ") Sheldon P. Zisook's June 9, 2016 decision. (*See* Doc 15-3 at 27–39). Accordingly, the Court will reference the background only as necessary to the analysis below.

## II.   LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the

---

[3] The Social Security Scheduling Order states that "[i]f either party desires oral argument, it must be requested in the manner prescribed by Rule 7.2(f) of the Local Rules of Civil Procedure upon the filing of the opening brief." (Doc. 5 at 3). Despite that Order's directions, Plaintiff requested oral argument in his Reply Brief, rather than in his Opening Brief. (Doc. 21 at 1). Further, Plaintiff offered no reasons in support of his request for oral argument. (*See* Doc. 21). After reviewing the briefs and the record on appeal, the Court finds nothing novel or complex in the issues as argued in the briefs or revealed by the record that would necessitate granting Plaintiff's request. For these reasons, oral argument is not necessary to the Court's resolution of the issues raised in Plaintiff's appeal. *See* LR Civ. 7.2(f) ("The Court may decide motions without oral argument.").

evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

Furthermore, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, it is a "fundamental rule of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon evidence discussed by the agency. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Thus, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015). Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (applying the principle to Social Security appeals). Accordingly, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

### A. Definition of a Disability

A claimant can qualify for Social Security disability benefits only if he can show that, among other things, he is disabled. 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is disabled only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B. The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

At the second step, the ALJ next considers whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* § 404.1520(c). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine." *Id.* § 404.1521(b).

Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509.

Third, having found a severe impairment, the ALJ then considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If so, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's residual functional capacity ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1). A claimant's RFC is the most the claimant can still do despite the effects of all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(1–2).

At step four, the ALJ determines whether, despite his impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this, the ALJ compares the claimant's residual function capacity with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 1520(a)(iv). Otherwise, the ALJ proceeds to the final step.

At the fifth and final step, the ALJ considers whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(g)(1). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(v). However, if the ALJ finds that the claimant cannot make an adjustment to other work,

then the claimant is disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *Id.* § 404.1520(a)(3). This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527; 404.1529.

## C.    The ALJ's Evaluation under the Five Step Process

Prior to beginning the sequential evaluation process, the ALJ noted that Plaintiff previously filed a Title II application for a period of disability and disability insurance benefits, and received a final decision dated September 14, 2012 stating that Plaintiff was disabled from February 7, 2010 through June 21, 2012. (Doc. 15-3 at 27). This September 14, 2012 decision also indicated that Plaintiff's period of disability ended on June 22, 2012, so Plaintiff was able to return to full-time work at a light exertional level as of that date. (*Id.*). Accordingly, the ALJ stated that pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the first ALJ's September 14, 2012 final decision finding that Plaintiff was not disabled as of June 22, 2012 gave rise to a "presumption of continuing nondisability" which Plaintiff could only overcome by proving "'changed circumstances' indicating a greater disability." (Doc. 15-3 at 27 (citing *Chavez*, 844 F.2d at 693)). However, because Plaintiff proved changed circumstances indicating a greater disability due to the fact that he had changed age category to closely approaching advanced age,[4] the ALJ determined that the presumption of continuing nondisability did not apply. (*Id.*). Further, the ALJ pointed out that the first ALJ's findings concerning Plaintiff's residual functional capacity ("RFC"), education, and work experience were entitled to res judicata consideration in the absence of "new and material evidence" on those issues. (*Id.* (citing *Chavez*, 844 F.2d at 693–94)). Deciding that Plaintiff's new evidence regarding his impairments was not material, the ALJ adopted the first ALJ's findings as to Plaintiff's severe impairments and RFC. (*Id.* at 27–28).

---

[4] *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) ("[A] change in the claimant's age category, as defined in the Medical–Vocational Guidelines, constitutes a changed circumstance that precludes the application of res judicata.").

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 15, 2013, the alleged onset date. (*Id.* at 30). In step two, the ALJ ascertained that Plaintiff had the following severe impairments: "degenerative disc disease, myocardial infarction, and history of implantable cardioverter-defibrillator." (*Id.*). At this step, the ALJ also found that Plaintiff's obesity, irritable bowel syndrome, bilateral shoulder pain, unstable angina, abdominal pain, depression, and anxiety were non-severe. (*Id.* at 30–34). Under the third step, the ALJ determined that the severity of Plaintiff's impairments, singly and in combination, did not meet or medically equal the severity of the impairments listed in the Social Security Regulations. (*Id.* at 34).

Before moving on to step four, the ALJ conducted an RFC determination after consideration of the entire record. (*Id.*). The ALJ determined that Plaintiff had "the residual functional capacity to perform the full range of light work" as defined in 20 C.F.R. § 404.1567(b). (*Id.*). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 38). Finally, the ALJ concluded at step five that based on Plaintiff's RFC, age, education, and work experience, Plaintiff could perform a significant number of jobs existing the national economy. (*Id.*). Consequently, the ALJ concluded that Plaintiff had not been under a disability under the Social Security Act from September 15, 2013 through June 9, 2016, the date of the ALJ's decision. (*Id.* at 39).

**III.    ANALYIS**

This matter is solely an appeal of ALJ Sheldon P. Zisook's June 9, 2016 decision denying Plaintiff's February 27, 2014 application for a period of disability and disability insurance benefits. Therefore, the Court will not consider any argument regarding ALJ Larry E. Johnson's September 14, 2012 decision finding Plaintiff disabled from February 7, 2010 through June 21, 2012. To this extent, the Court disregards any arguments made by Plaintiff contesting ALJ Johnson's 2012 decision. (*See* Doc. 18 at 4–5).

Moreover, the Court recognizes that "a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted). Nevertheless, the Court will not address issues that are not argued with any specificity. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008). A general allegation that the ALJ committed legal error, or that the ALJ's determination is not supported by substantial evidence, is insufficient to raise that issue for review. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (internal citation omitted) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim[.]").

After thorough review of Plaintiff's Complaint (Doc. 1), Opening Brief (Doc. 18), and Reply (Doc. 21), the Court gathers that Plaintiff believes the ALJ's June 9, 2016 denial of his application for a period of disability and disability insurance benefits was erroneous for the following reasons: (1) the ALJ referred to two rescinded Social Security Rulings ("SSR") in making his decision rather than following SSR 16-3p; (2) the ALJ improperly weighed the medical opinion evidence; (3) the ALJ improperly placed him in the "light work" category rather than the "less than sedentary work" category; (4) the ALJ improperly based his decision on his own medical history; and (5) Plaintiff's prior attorney failed to provide all of Plaintiff's evidence to Social Security. However, for the reasons set forth below, the Court finds that the ALJ's decision was supported by substantial evidence and, accordingly, affirms.

**A.** **Whether the ALJ Erred in Citing SSRs 96-3p and 96-4p Instead of SSR 16-3p**

Plaintiff claims that the ALJ erred in referring to SSRs 96-3p and 96-4p, which have since been rescinded, rather than following SSR 16-3p. (Doc. 18 at 3). Plaintiff's argument fails. Although SSR 16-3p became effective in March 2016, that ruling did not

rescind either SSR 96-3p or 96-4p; in fact, SSR 16-3p even cross references SSR 96-3p. SSR 16-3p, 81 FR 14166-01, *14166, *14172 (Mar. 16, 2016). Rather, SSRs 96-3p and 96-4p were not rescinded until June 14, 2018, at which time the Social Security Administration determined that these SSRs were "unnecessarily duplicative" of SSR 16-3p. Rescission of SSRs 96-3p and 96-4p, 2018 WL 3461816, at *1 (June 14, 2018) ("We will apply this rescission notice on June 14, 2018."). Therefore, on June 9, 2016, the date of the ALJ's decision, SSRs 96-3p and 96-4p were still in effect. *See id.* Accordingly, the ALJ did not err in citing SSRs 96-3p and 96-4p in his decision.

The Court is also unable to see how the ALJ's decision fails to comply with SSR 16-3p. Plaintiff argues that the ALJ "did NOT take into consideration the statements, [and] affidavit's [sic] written by the plaintiff, witnesses, and doctors" despite SSR 16-3p which, according to Plaintiff, "states that the adjudicator *must* take into consideration" non-medical sources, such as family and friends. (Doc. 18 at 3) (emphasis in original).[5] Nevertheless, there is no indication that the ALJ failed to consider statements made by Plaintiff, his family and friends, or his doctors. In fact, the ALJ's decision is replete with references to Plaintiff's testimony, subjective complaints, and medical records. (*See* Doc. 15-3 at 27–39). Further, the ALJ even stated that he "considered the third party statements provided by Janine Doffing, the claimant's girlfriend." (*Id.* at 37–38).[6]

---

[5] SSR 16-3p states that these non-medical sources "*may* provide information from which we *may* draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms." SSR 16-3p, 81 FR 14166-01, at *14170 (emphasis added). If the ALJ "cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence," then the ALJ will "consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms[,]" including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms[.]" *Id.* at *14169.

[6] Plaintiff submitted two third party affidavits completed by his girlfriend and his mother to the Appeals Council, which made that evidence part of the administrative record. (Doc. 15-3 at 13; Doc. 15-7 at 85–92); *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162–63 (9th Cir. 2012). Accordingly, the Court must evaluate this evidence when determining whether substantial evidence supports the ALJ's decision. *Id.* The Court finds that these affidavits do not divest the ALJ's decision of substantial evidence. Similar to Plaintiff's own testimony, these affidavits describe Plaintiff's symptoms, activity limitations, and medical issues. (*See* Doc. 15-7 at 85–92). However, "as the ALJ explained in discounting Plaintiff's subjective complaints, the medical records showed that he functioned better than he alleged and he performed activities that stood at odds

Moreover, SSR 16-3p directs the ALJ to consider whether an individual's symptoms and related limitations are consistent with the evidence in his record. SSR 16-3p, 81 FR 14166-01, *14170. In accordance with this, the ALJ considered Plaintiff's medical records and activity level when assessing his subjective complaints. (*See, e.g.*, Doc. 15-3 at 35 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.").

In his Reply, Plaintiff points to various pages of the certified administrative record which he believes were overlooked by the ALJ and show that SSR 16-3p "was not only NOT followed, but essentially ignored." (Doc. 21 at 4). Although Plaintiff seems to believe that the ALJ's failure to reference each page of Plaintiff's medical records means that the ALJ ignored those records, (*id.*), that is not the case. Plaintiff first claims that the ALJ failed to consider pages 511 through 521 of the certified administrative record, (*id.* (citing Doc. 15-8 at 137–147)), which are pain assessment records completed by Plaintiff from the Phoenix Neurological Institute, (Doc. 15-2 at 3; Doc. 15-8 at 137–147). Nevertheless, these records were marked as Exhibit B-7F, (Doc. 15-2 at 3), and cited frequently by the ALJ in his decision. (*See* Doc. 15-3 at 30–33, 35, 37 (citing Exhibit B-7F)). Likewise, Plaintiff contends that the ALJ failed to consider pages 540, 543, 545, 549, 551, 559, and 561 of the certified administrative record, (Doc. 21 at 4–5 (citing Doc. 15-8 at 166, 169, 171, 175, 177, 185, 187)), which are various records which Plaintiff believes corroborate his complaints of pain. However, these records were marked as Exhibit B-11F, (Doc. 15-2 at 3), and cited multiple times by the ALJ in his decision, (*see*

with his claim of disability." (Doc. 20 at 10 (citing Doc. 15-3 at 35–37)). Where an ALJ gives germane reasons for rejecting a claimant's testimony, those reasons are equally germane to rejecting similar testimony by a lay witness. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). This is true even where the claimant submits a lay witness opinion to the Appeals Council for the first time. *See Johnson v. Berryhill*, 708 F. App'x 345, 346 (9th Cir. 2017) (holding that the lay witness evidence submitted to and considered by the Appeals Council did not undermine the ALJ's decision because the lay witness statement was similar to the claimant's testimony, which the ALJ properly discounted, and because an ALJ "may reject the lay witness testimony for the same reasons he rejected the claimant's testimony").

Doc. 15-3 at 31, 35, 37 (citing Exhibit B-11F)). Moreover, the ALJ even cites Exhibits B-7F and B-11F in support of his statement that "[w]hile the claimant alleged that he experienced constant disabling pain, review of available evidence of record demonstrated that the claimant was routinely assessed to be in no apparent distress." (*Id.* at 37).[7]

Similarly, Plaintiff alleges that the ALJ failed to consider pages 579 and 588 of the record, which are selected medical records from his visits with a cardiologist. (Doc. 21 at 5 (citing Doc. 15-8 at 205, 214)). Nonetheless, these records were marked as Exhibit B-12F, (Doc. 15-2 at 3), and cited throughout the ALJ's decision, as well, (*see* Doc. 15-3 at 31–33, 36–37 (citing Exhibit B-12F)). *See also id.* at 37 ("While the claimant testified that his cardiovascular symptoms got worse, and treatment records did show that the claimant complained of symptoms of chest pain, he reported that the symptoms did not include chest pressure, shortness of breath, jaw pain, orthopnea, paroxysmal nocturnal dyspnea, dyspnea with exertion or pedal enema.") (citing Exhibit B-12F/7, which refers to page 7 of Exhibit B-12F and which corresponds with page 579 of the certified administrative record, located at Doc. 15-8 at 205).

Finally, Plaintiff claims that the ALJ did not consider pages 600, 603, 606, 609, 612, 615, 619, 623, 627, and 630 of the record, which are selected progress and medical notes from Empact Suicide Prevention Center referencing Plaintiff's subjective complaints. (Doc. 21 at 5 (citing Doc. 15-9 at 2, 5, 8, 11, 14, 17, 21, 25, 29, 32)). Again, these records were marked as Exhibits B-13F and B-14F, (Doc. 15-2 at 3), and referred to multiple times in the ALJ's decision, (*see* Doc. 15-3 at 33–34). For these reasons, the Court is unable to find that that the ALJ "ignored" the various records cited by Plaintiff, or failed to comply with SSR 16-3p.

### B.     Whether the ALJ Improperly Weighed the Medical Opinion Evidence

Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of Dr. Gaitonde and Mr. Triplett, PA-C, two of Plaintiff's treating sources, while assigning

---

[7] Plaintiff does not argue that the ALJ improperly evaluated his subjective pain and symptom testimony. (*See* Doc. 18; Doc. 21). Accordingly, the Court deems this argument waived. *See Arpin*, 261 F.3d at 919; *Bray*, 554 F.3d at 1226 n. 7.

"great weight" to the opinions of other physicians. (Doc. 18 at 4).

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195. Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an

ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 1.   Substantial Evidence Supports the ALJ's Assignment of "Little Weight" to the Opinions of Dr. Gaitonde and Mr. Triplett

Plaintiff contends that the ALJ erred by assigning "little weight" to the letter provided by Dr. Gaitonde, (Doc. 18 at 4), one of Plaintiff's treating physicians "who followed the claimant secondary to his history of cardiac arrest as well as ICD implantation." (Doc. 15-3 at 37; Doc. 15-8 at 148). In this letter, Dr. Gaitonde stated that due to Plaintiff's history of coronary artery disease, cardiomyopathy, and cardiac arrest, Plaintiff "would qualify for disability due to his overall limited functional capacity." (Doc. 15-8 at 148).

Despite Plaintiff's contention, the ALJ offered "specific and legitimate reasons" supported by substantial evidence for giving little weight to Dr. Gaitonde's opinion. *Ryan*, 528 F.3d at 1198. First, the ALJ determined that "Dr. Gaitonde's assessment[] with regard to the claimant's functional capacity was extremely vague[.]" (Doc. 15-3 at 37). When evaluating conflicting medical opinions, "an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Here, Dr. Gaitonde's opinion is merely five sentences long, does not cite any records, and concludes that Plaintiff "would qualify for disability due to his overall limited functional capacity" without specifying what Plaintiff can or cannot do. (Doc. 15-8 at 148). Not only does Dr. Gaitonde's letter fail to shed any light on what Plaintiff's "limited functional capacity" entails, but the ultimate determination of disability is "an issue reserved to the Commissioner." SSR 96-8p, 1996 WL 374184, at *7 n. 8 (July 2, 1996).

The ALJ also found that "Dr. Gaitonde's assessment[] with regard to the claimant's functional capacity was . . . inconsistent with objective medical and clinical findings, the claimant's reports and denials of symptoms, and the claimant's reported activities[.]" (Doc. 15-3 at 37). In support of this, the ALJ referred to a record from Plaintiff's May 8, 2014 visit with Dr. Lababidi, one of Plaintiff's treating physicians at Gilbert Cardiology who saw Plaintiff at least nine times from 2013 through 2016. (*Id.* (citing Doc. 15-8 at 210); *see also* Doc. 15-8 at 199, 202, 205, 208, 211; Doc. 15-9 at 112, 115, 118, 123). In contrast to Dr. Gaitonde's opinion that Plaintiff had "overall limited functional capacity" which rendered him disabled, Dr. Lababidi stated in his assessment that Plaintiff was "currently able to complete all activities and work without symptoms or limitations." (Doc. 15-3 at 37; Doc. 15-8 at 210).

The ALJ also showed that Dr. Gaitonde's opinion was inconsistent with Plaintiff's reports and denials of symptoms as well as reported activities by referring to Plaintiff's treatment record from a March 19, 2014 visit with Dr. Lababidi. (*See* Doc. 15-3 at 37 (citing Exhibit B-12F/7, which refers to Doc. 15-8 at 205)). The ALJ stated that "[w]hile the claimant testified that his cardiovascular symptoms got worse, and treatment records did show that the claimant complained of symptoms of chest pain, he reported that the symptoms did not include chest pressure, shortness of breath, jaw pain, orthopnea, paroxysmal nocturnal dyspnea, dyspnea with exertion, or pedal edema." (*Id.*). In fact, the ALJ noted that a "review of available evidence of record showed that the claimant routinely denied chest pain or shortness of breath in his review of symptoms." (*Id.* at 31 (citing Exhibits B-1F, B-2F, B-3F, B-5F, B-7F, and B-11F)). The ALJ's review of Plaintiff's treatment records demonstrated that Plaintiff reported that his heart symptoms were "mild," and only occurred "occasionally," with episodes lasting "for minutes." (Doc. 15-8 at 205; Doc. 15-3 at 37; *see also id.* at 208 (indicating that at a May 8, 2014 visit, Plaintiff told Dr. Lababidi that Plaintiff only experienced "dull" and "mild" pain about once per week, with cardiac treatment resulting in "good symptom control")). Plaintiff also reported that his symptoms were "not exacerbated by walking, stress,

exercise, cold weather, or eating." (Doc. 15-8 at 205, 208).

Further, the ALJ noted that Plaintiff's treatment records from a May 8, 2014 visit at Gilbert Cardiology indicated that Plaintiff himself "reported that he was currently able to do activities of daily living without limitations and able to work without limitations," and that his infrequent chest discomfort was "unrelated to exertion." (Doc. 15-3 at 31; Doc. 15-8 at 208). In fact, after reviewing Plaintiff's Function Report, the ALJ found that Plaintiff "was able to perform activities of daily living independently," such as providing care for his young son, cooking for him, taking him to school, picking him up, helping him shower, and putting him to bed. (Doc. 15-3 at 30 (citing Doc. 15-7 at 49–57), 36). Just as the ALJ concluded, Plaintiff's own reports and denials of symptoms are in sharp contrast to Dr. Gaitonde's opinion that Plaintiff had "overall limited functional capacity." (*Id.* at 37). For these reasons, the Court finds that the ALJ offered "specific and legitimate reasons" supported by substantial evidence for giving little weight to Dr. Gaitonde's opinion. *Ryan*, 528 F.3d at 1198.

The ALJ also offered "specific and legitimate reasons" supported by substantial evidence for discounting the opinion of Mr. Triplett. *Ryan*, 528 F.3d at 1198. Mr. Triplett, a PA who treated Plaintiff at the Phoenix Neurological & Pain Institute, wrote a brief letter in August 2014 which mainly repeats what Plaintiff told Mr. Triplett about his pain symptoms. (*See* Doc. 15-8 at 149 (stating that Plaintiff "relates" that narcotics "help him with his activities of daily living" and that Plaintiff "endorses" his inability to do sedentary work)). However, the ALJ noted in his decision that Plaintiff's "allegations regarding the frequency and intensity of his reported disabling pain were inconsistent with observations and reports provided by treating and examining sources." (Doc. 15-3 at 37). While Plaintiff "alleged that he experienced constant disabling pain, review of available evidence of record demonstrated that the claimant was routinely assessed to be in no apparent distress." (*Id.* (citing Exhibit B-5F/2, B-5F/7, B-6F/6, B-7F, B-11F, B-12F, and B-17F)).[8] Given that Plaintiff's subjective complaints and denials of

---

[8] (*See, e.g.*, Doc. 15-8 at 97, 102, 109).

symptoms were at odds with the medical evidence and his own reported activities, the ALJ assigned little weight to Mr. Triplett's opinion because it "simply reiterated the claimant's subjective functional limitations." (Doc. 15-3 at 37). An "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible[,]" *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), as they have been here. (Doc. 15-3 at 37).

The ALJ also discounted Mr. Triplett's opinion letter because it "provided little guidance with regard to the claimant's assessed functional capacity[.]" (*Id.*). Mr. Triplett's letter states that it is "intended to be a general summary of [Plaintiff's] state of affairs vis a vis his pain complaint." (Doc. 15-8 at 149). As Mr. Triplett seems to himself acknowledge when he recommends another practice that might be able to provide "more specific functional capacity recommendations," (*id.*), his letter lacks detailed, objective insight into Plaintiff's functional capacity based on objective medical findings. Accordingly, substantial evidence supports the ALJ's discounting of Mr. Triplett's opinion because Mr. Triplett's letter does not show how Plaintiff's alleged pain symptoms "translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (upholding ALJ's rejection of a treating psychologist's opinion where that opinion failed to show how the claimant's symptoms precluded him from working). Consequently, the Court finds that the ALJ offered "specific and legitimate reasons" supported by substantial evidence for giving little weight to Mr. Triplett's opinion. *Ryan*, 528 F.3d at 1198.

2. Substantial Evidence Supports the ALJ's Assignment of "Great Weight" to the Opinions of Drs. Novak, Wright, Penner, and Wavak

Plaintiff also claims that the ALJ erred by assigning "great weight" to the "non-treating medical source[s] that happen[] to work for the state agency," although he cites no evidence or makes no argument in support of this allegation. (Doc. 18 at 4). Nevertheless, the Court finds that substantial evidence supports the ALJ's assignment of "great weight" to the opinions of Drs. Novak, Wright, Penner, and Wavak. After

reviewing Plaintiff's medical records, these consulting physicians concluded that Plaintiff's mental impairments remained non-severe and that he could perform light exertional work. (Doc. 15-4 at 28–31, 46–50). Acknowledging that these consultants were non-treating and non-examining sources, the ALJ supported his assignment of great weight to their opinions because the consultants "had an opportunity to review newly admitted evidence available at the time that their opinions were made." (Doc. 15-3 at 37). Further, the ALJ stated that these consultants' "opinions were consistent with the cited records and supported by objective medical and clinical findings, the claimant's reported activities, and examination results." (*Id.*).

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Here, the consulting physicians' opinions comported with the overall medical record and with Plaintiff's reported activity level. For example, these physicians rendered conclusions as to Plaintiff's heart conditions consistent with the record and with the ALJ's own findings from the record. *Compare* (Doc. 15-4 at 28, 31, 46, 49–50), *with* (Doc. 15-8 at 208, 210–11), *and* (Doc. 15-3 at 31, 36). The consulting physicians also rendered conclusions consonant with the medical records and the ALJ's findings as to Plaintiff's irritable bowel syndrome. *Compare* (Doc. 15-4 at 31, 50), *with* (Doc. 15-8 at 114, 117, 166, 173, 175, 177, 179, 182; Doc. 15-9 at 102, 108, 110), *and* (Doc. 15-3 at 31). Further, consistent with Plaintiff's reported activities and the ALJ's findings, these physicians also concluded that Plaintiff had no limitations performing daily activities. *Compare* (Doc. 15-4 at 28–29, 30–31, 46, 49–50), *with* (Doc. 15-7 at 49–57), *and* (Doc. 15-3 at 30).

As the ALJ found the opinions of Drs. Novak, Wright, Penner, and Wavak to be consistent with the record as a whole, the ALJ was permitted to assign great weight to these opinions. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citation omitted) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and

are consistent with it."); *Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (holding that the ALJ did not err in giving the greatest weight to the opinions of the non-examining state agency medical consultants because the ALJ found the consultants' opinions "consistent with the greater medical record, progress and treating notes, and [the claimant's] description of her daily activities") (citing SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.")).

In sum, the Court finds that the ALJ properly assessed and weighed the medical opinion evidence.

**C.** **Whether the ALJ Improperly Placed Plaintiff in the "Light Work" Category**

According to the Social Security Regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, jobs in the light work category may require "a good deal of walking or standing[.]" *Id.* If someone can do light work, the ALJ also determines that he or she can do sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.* In contrast, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 404.1567(a).

Plaintiff believes the ALJ erred by placing him in the "light work" category rather than in the "less than sedentary work" category because his cardiologist restricted him from lifting more than 15 pounds, because he has "lost his ability to do fine dexterity work," and because he previously testified that he had limited ability to reach overhead. (Doc. 18 at 4 (citing Doc. 15-3 at 58, 73, 89)). Although Plaintiff cites his medical record from his November 7, 2014 visit with his cardiologist to show that he was limited from lifting more than 15 pounds, (Doc. 15-3 at 73), this activity limitation is an anomaly

compared to his cardiologist's assessments from other visits, as the ALJ pointed out, (*id.* at 37). Moreover, while Plaintiff cites a March 8, 2017 record from Arizona Pain Specialists as support for his claim that he has "lost his ability to do fine dexterity work," (*id.* at 58), this record from 2017 is far outside the period at issue in this appeal, as the ALJ's decision only reviewed whether Plaintiff had been under a disability from September 15, 2013 through June 9, 2016, (*id.* at 27, 39). Finally, although Plaintiff testified that he had limited ability to reach overhead, (*id.* at 89), the ALJ ultimately determined that the "objective clinical findings were inconsistent" with Plaintiff's allegations regarding the limiting effects of her shoulder pain, and that Plaintiff's "reported bilateral shoulder pain was nonsevere," (*id.* at 31). Accordingly, the Court finds that the ALJ relied on substantial evidence, including medical records, opinions of consulting physicians, and Plaintiff's reported symptoms and activities when determining that Plaintiff had the RFC to perform light work. (Doc. 15-3 at 34–38).

Furthermore, after determining that Plaintiff's new evidence regarding his impairments was not material, the ALJ was required to adopt the first ALJ's findings as to Plaintiff's RFC pursuant to *Chavez v. Bowen*. *See Chavez*, 844 F.2d at 693–94 (stating that claimant's attainment of "advanced age" status was a "changed circumstance" that precluded the application of res judicata to the first ALJ's "ultimate finding against disability," but applying "some res judicata consideration" to the first ALJ's findings "concerning the claimant's [RFC], education, and work experience."). Therefore, the ALJ did not err in placing Plaintiff in the "light work" category, as the first ALJ found that Plaintiff was able to return to full-time work at the light exertional level as of June 22, 2012. (Doc. 15-3 at 27).

### D. Whether the ALJ Improperly Based His Decision On His Own Medical History

Plaintiff argues that the ALJ erred by basing his decision on "his own medical history in regards to the plaintiffs [sic] shoulder pain" because the ALJ mentioned at the end of Plaintiff's hearing that he, too, had suffered from a frozen shoulder. (Doc. 18 at 4

(citing Doc. 15-3 at 113)). While it is true that an ALJ may not substitute his own medical judgment for that of a medical expert,[9] the Court is unable to find any evidence that the ALJ's remark had any impact on his decision here. Rather, the ALJ cited relevant evidence, including various medical records and records of Plaintiff's own subjective complaints, before reaching the conclusion that Plaintiff's reported bilateral shoulder pain was non-severe. (*See* Doc. 15-3 at 31 ("Consequently, while the claimant's subjective reports with regard to his shoulder pain [were] supported by treatment records to address those symptoms, objective clinical findings were inconsistent with the claimant's allegations regarding the limiting effects of those symptoms and the claimant's reported bilateral shoulder pain was non-severe.")). As a result, the Court is unable to find that the ALJ improperly based his decision on his own medical history.

### E. Whether the ALJ's Decision Was Not Supported by Substantial Evidence Due to the Alleged Failure of Plaintiff's Prior Attorney to Provide the ALJ with all of Plaintiff's Evidence

Plaintiff alleges that his former attorney failed to provide the ALJ with all of his medical records and evidence. (Doc. 18 at 2–3). Specifically, Plaintiff states that "pages 351-353, & 346-351 were NOT turned into [sic] SS" by his prior attorney. (*Id.* (citing Doc. 15-7 at 85–92)).[10] According to Plaintiff, if the ALJ had this evidence before him, it would have provided him "with the answers to most, if not all, of the questions raised by ALJ Zisook in his unfavorable decision, . . . and would have produced a different outcome[.]" (*Id.*). Nevertheless, Plaintiff is mistaken, as pages 346 through 353 of the certified administrative record were, in fact, provided to the ALJ, and were even marked

---

[9] *See Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (An ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000, *as amended* Dec. 13, 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D.Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.") (internal quotation marks, alterations and citations omitted).

[10] The pages numbers Plaintiff refers to are the page numbers located in the bottom right hand corner of the pages in the certified administrative record (Doc. 15).

as Exhibit numbers B-15E and B-16E. (*See* Doc. 15-7 at 85–92). Moreover, the transcript of Plaintiff's May 11, 2016 hearing specifically notes that exhibits B-1A through B-17F were "received into evidence and made a part of the record" after Plaintiff's counsel responded to the ALJ that he had no objection to the admission of any of the documents in the evidence file. (Doc. 15-3 at 76). Likewise, Plaintiff contends that his prior attorney failed to submit "pages 354-368" to Social Security for the ALJ's review. (Doc. 18 at 3 (citing Doc. 15-7 at 93–107)). Again, Plaintiff is incorrect, as pages 354 through 368 of the certified administrative record were provided to the ALJ and were marked as Exhibit number B-17E. (*See* Doc. 15-7 at 93–107). Despite Plaintiff's claims, the ALJ clearly had the evidence on pages 346 through 368 of the certified administrative record before him when reviewing Plaintiff's application for disability.

Plaintiff also states the evidence located on pages 44 through 72 of the certified administrative record was not submitted to Social Security "until the plaintiff had written a rebuttal . . . letter to the appeals council in regards to ALJ Zisook's unfavorable decision[.]" (Doc. 18 at 3 (citing Doc. 15-3 at 45–73)). According to Plaintiff, this "point[s] out the incompetence of . . . plaintiffs [sic] representing attorney at that time." (*Id.*). Upon Plaintiff's request for review of the ALJ's decision, the Appeals Council determined that the materials Plaintiff submitted covering the period from September 2, 2016 through March 8, 2017 (located on pages 44 through 57 of the certified administrative record) did not relate to the period at issue, as the ALJ's decision only reviewed whether Plaintiff had been under a disability from September 15, 2013 through June 9, 2016. (*Id.* at 10, 27, 39).[11] Accordingly, the Appeals Council did not consider this evidence on pages 44 through 57 of the certified administrative record. (Doc. 15-3 at 10). This is consistent with 20 C.F.R. § 404.970(b), which states: "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only

---

[11] Although the Appeals Council's decision states that the evidence supplied by Plaintiff is dated from September 9, 2016 through March 8, 2017, the Court believes the first date was a typographical error. (Doc. 15-3 at 10). A review of the records themselves as well as the Court Transcript Index indicates that the materials located on pages 44 through 57 of the certified administrative record are dated September 2, 2016 through March 8, 2017. (Doc. 15-2 at 1; Doc. 15-3 at 57–58).

where it relates to the period on or before the date of the administrative law judge hearing decision."

The Appeals Council also indicated that the evidence Plaintiff provided spanning the period from May 20, 2009 through December 3, 2015 (located on pages 58 through 72 of the certified administrative record)[12] did "not show a reasonable probability that it would change the outcome of the decision." (Doc. 15-3 at 10). To the extent Plaintiff is attempting to argue that the Appeals Council failed to properly consider this evidence, the Court notes that it does "not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011)); *see also Bifarella v. Colvin*, 51 F. Supp. 3d 926, 932–33 (E.D. Cal. 2014) ("[T]he Ninth Circuit has made clear that district courts do not have jurisdiction to review whether or not an Appeals Council appropriately denied a request for review of an ALJ's decision."). Moreover, the Appeals Council was not required to provide a detailed explanation or any evidentiary finding as to why the additional evidence submitted by Plaintiff did not warrant review of the ALJ's decision. *See Taylor*, 659 F.3d at 1232.

In support of his position that many of his medical records are not on file with the Court due to the alleged failure of his former attorney to provide various medical records to Social Security, Plaintiff also attached a medical record from a January 18, 2012 appointment with Dr. Sudhakar Reddy to his Opening Brief. (Doc. 18 at 2–3, 7). Plaintiff claims that this record "shows the diagnosis for Irritable Bowl [sic] Syndrome," but "is not found in the records provided to the court from Social Security[.]" (*Id.* at 3). At issue is whether the Court may review this additional medical record. (*See* Doc. 20 at 10–11).

Upon review of the Commissioner's final decision, the "court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying,

---

[12] According to the Court Transcript Index, the materials provided by Plaintiff on pages 58 through 72 of the certified administrative record are dated May 20, 2009 through December 3, 2015. (Doc. 15-2 at 1).

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added). Accordingly, the Court cannot "affirm, modify, or reverse" the Commissioner's final decision based upon evidence not included in the transcript of record. However, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *see also Orteza v. Shalala*, 50 F.3d 748, 751 (9th Cir. 1994). Evidence is material if it bears "directly and substantially on the matter in dispute." *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). "As such, it must be probative of the claimant's condition at or before the time of the disability hearing." *Held v. Colvin*, 82 F. Supp. 3d 1033, 1042 (N.D. Cal. 2015) (citing 20 C.F.R. § 404.970(b); *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987)). "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)); *see also Johnson v. Schweiker*, 656 F.2d 424, 426 (9th Cir. 1981) ("Good cause can be shown 'where no party will be prejudiced by the acceptance of additional evidence[.]'") (quoting *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)).

Here, Plaintiff has not shown that the medical record he attaches to his Opening Statement is material or that there is good cause for his failure to incorporate this evidence into the record before the ALJ. First, this evidence is not material, as it does not relate to the period of disability in question in this case but, rather, to a prior adjudicated period. Specifically, the medical record is dated January 18, 2012, but Plaintiff's current application for a period of disability and disability insurance benefits alleges disability beginning September 15, 2013. (Doc. 15-3 at 26). Rather, the January 18, 2012 medical record concerns the time period relevant to Plaintiff's previous application for Title II disability, where ALJ Larry E. Johnson determined Plaintiff was disabled from

February 7, 2010 through June 21, 2012. (Doc. 15-4 at 6, 13). Therefore, this January 18, 2012 medical record is not material because Plaintiff cannot show that it is probative of his impairments during the relevant period, nor demonstrate a "reasonable possibility that the new evidence would have changed the outcome of the determination." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010); *see Allums v. Colvin*, 649 F. App'x 420, 424 (9th Cir. 2016) (denying the plaintiff's request to supplement the record and remand under sentence six of 42 U.S.C. § 405(g) where the court determined that the new evidence was not material because the claimant failed to show that the evidence was probative of his impairment during the relevant period or demonstrate a reasonable possibility that the evidence would have changed the outcome of his case).

Plaintiff is also unable to demonstrate good cause for failing to submit this new evidence, as Plaintiff cannot show that the medical record "was unavailable earlier." *Mayes*, 276 F.3d at 463. To the extent Plaintiff alleges that his former counsel failed to submit this medical record, among others, to Social Security, the Court "does not believe that counsel's performance is a proper basis upon which to find 'good cause' for not submitting to the ALJ available evidence." *Morales v. Colvin*, No. CIV.A. 13-229J, 2015 WL 1507844, at *4 (W.D. Pa. Mar. 31, 2015) (denying the plaintiff's request for remand for consideration of new evidence under sentence six of 42 U.S.C. § 405(g) where the plaintiff failed to show that evidence was material and where the court stated that it "does not believe that plaintiff's dissatisfaction with her prior counsel constitutes adequate good cause for a remand in this case."). As Plaintiff failed to meet both the good cause and materiality requirements, remand is not warranted for consideration of the medical record from Plaintiff's January 18, 2012 appointment with Dr. Sudhakar Reddy.

For these reasons, the Court finds that the ALJ's decision was supported by substantial evidence despite Plaintiff's allegation that his prior attorney did not turn in various documents to Social Security.

///

///

**IV.    CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 3rd day of January, 2019.

James A. Teilborg
Senior United States District Judge